# CHARLESTON.

## F. R. B. CEMETERY ASS'N. v. REDD.

*(GREEN, JUDGE, absent.)

Submitted June 25, 1889.—Decided Nov. 20, 1889.

1. EMINENT DOMAIN—CEMETERIES.
    Under our constitution private property can be taken only for public use.

2. EMINENT DOMAIN—CEMETERIES.
    An application to condemn land for public use must distinctly state that the land is needed for public use, and will, when condemned, be devoted to such public use.

*On account of illness.

3. EMINENT DOMAIN—CEMETERIES.

An application to condemn land for cemetery purposes should also show that the land to be taken does not lie within 400 yards of a dwelling-house, unless to extend the limits of a cemetery already located, and then, that such limits will not be extended nearer to any dwelling house which is within 400 yards.

4. EMINENT DOMAIN—CEMETERIES—PROCEEDINGS.

Statutes regulating proceedings for the condemnation of private property for public use must be strictly pursued in the proceedings, and the statutes themselves strictly construed.

*R. White* for plaintiff in error.

*Ewing, Melvin & Reilley* for defendant in error.

BRANNON, JUDGE:

The Fork Ridge Baptist Cemetery Association in March, 1888, filed in the Circuit Court of the county of Marshall its application seeking to condemn land owned by J. S. Redd for its use for the burial of the dead. Redd demurred to this application on the ground that the applicant, as such corporation, had not the right or power to condemn property, and the court sustained the demurrer, and dismissed the application, with costs against the applicant; and said association obtained this writ of error.

Ownership and enjoyment of private property are sacred in the eye of the law. The owner's right yields only to public necessity. The great power of eminent domain does overcome this right of private property, but never but for public use, under our constitution. *Varner* v. *Martin*, 21 W. Va. 534; *Railroad Co.* v. *Railroad Co.* 17 W. Va. 812. The exercise of this great power, as it destroys the citizen's ownership, is jealously guarded. In *Varner* v. *Martin, supra*, it was held by this Court that where the property to be condemned is to come under the control of private persons or corporations three qualifications are necessary to impose upon it such a public use as will justify its taking, viz.: (1) The use which the public is to have of the property must be fixed and definite. The general public must have a right to a certain definite use of the private property, on terms and for charges fixed by law; and the owner of the property must be compelled by law to permit the general public to enjoy it.

(2) This use of the property by the public must be a substantially beneficial one, which is obviously needful for the public, and which it could not do without, except by suffering great loss or inconvenience. (3) The necessity for condemnation must be obvious. It must obviously appear from the location of the property, or from the character of the use to which it is to be put, that the public could not, without great difficulty, obtain the use of this or other land which would answer the same general purpose, unless it be condemned; and in such case the courts will judge of the necessity for condemnation. Thus the public use is all-important. There must be an imperious public need. There must be a plain public use in view. The application presented to the court for condemnation is the basis of the proceeding. Must it not plainly and affirmatively show the existence of this public need and public use?

Our Code of 1887 (chapter 42, § 5), says that the application "must also state the purpose to which the estate is intended to be appropriated." Being required thus to state the purpose of condemnation, it must state such a purpose as under the law will call into exercise the power of eminent domain; that is, a public use. Lewis, Em. Dom. § 353, says: "The petition should show the use or purpose for which the property is desired, and that it is within the statutory powers conferred. It should show a clear right to condemn the property described. Accordingly it must not only show that the property is wanted for a public use, but also that it is for a use that is within the particular statute under which the proceedings are had. * * * A petition for a cemetery should show that the privilege of interment is open to the public, as a cemetery may be private as well as public." It must state, not merely a public use intended, but a public necessity.

The petition in this case states that the applicant is a corporation under the laws of this State, for cemetery purposes; that "it needs for its cemetery purposes, and for the burial of the dead," the land described. The articles of incorporation, read on oyer, create the applicant a corporation for "purchasing a tract or parcel of land in the vicinity of Fork Ridge Baptist Church, in the county of Marshall, in the State

of West Virginia, and of obtaining land in such manner and to such extent as is allowed by the laws of the State of West Virginia, in said vicinity, for the purpose and uses of a cemetery for the burial of the dead." This does not distinctly and affirmatively show a public use and a public need. At best, it only impliedly shows it.

In *Association* v. *Beecher*, 53 Conn. 551 (5 Atl. Rep. 353) the opinion says: "The complaint alleges that the plaintiff is an association, duly organized under the laws of this State, for the purpose of establishing a burying-ground; that it now owns one; that it desires to enlarge it; and that such enlargement is necessary and proper. There is no allegation that the land which it desires to take for such enlargement is for the public use, in the sense indicated in this opinion." The petition was held insufficient.

The argument in behalf of appellant is that as it is a public cemetery corporation, needing the land for burial purposes, we are to understand or infer that the public use and need exist. That is mere inference or argumentative conclusion; and pleadings should not be argumentative. Steph. Pl. rule 3, p. 384. But our statutes do not define the public duties of cemetery associations, nor prescribe regulations as to how the public shall use and enjoy the cemeteries.

Perhaps this cemetery is not for the general public; for, as said in the case cited from Connecticut, some cemeteries are private. Regulations in this cemetery may vest the lots in their owners or heirs, and exclude the general public, as *In Re Association*, 66 N. Y. 569, where the right to condemn was denied. We can not infer that because it is a corporation seeking to condemn, we are to take it for granted that in this instance it is seeking to answer a public need. The mere character of the applicant does not import that. If that were so, the Pan-Handle Railroad Company would have succeeded in its proceeding against the Benwood Iron-Works. A railroad performs public functions; but in that case, reported in 31 W. Va. 710 (8 S. E. Rep. 453) the company was denied the right to condemn land for a switch or a branch track to manufacturing steel-works from its railroad, because the use was only to convey freight to and from the steel-works, and was thus only for the use of the railroad company

and steel-works. A corporation mining coal was refused the right to condemn land for a way for transportation of its coal in *Salt Co.* v. *Brown*, 7 W. Va. 191. The fact that by chapter 44, Acts 1872–73, cemetery associations may sell, almost without restriction as to its use, any part of their land, would weaken any legal inference from their corporate capacity that their land is to be devoted to public use. It is not, therefore, sufficient to say, because a corporation says it needs for its use land, that that is necessarily public need or use, or that, in this case, the averment that the association needs it for its use in the burial of the dead makes it sufficient. The application should certainly aver that the land was needed for the public use in the burial of the dead, and that it would be, when condemned, devoted to the public use in the burial of the dead.

Again, section 2, c. 42, Code 1887, while providing that private property may be condemned for cemetery associations, explicitly declares in clause 8: "But no land shall be so taken for cemetery purposes which lies within four hundred yards of a dwelling-house, unless to extend the limits of a cemetery already located, and then only so that such limits shall not be extended nearer to any dwelling-house which is within four hundred yards." The petition contains no allegation to meet this provision.

As private property can be taken for public uses, against the consent of the owner, only in such cases and by such proceedings as may be specially provided by law, and as these proceedings are not according to the common law, and are in derogation of private right, and as they wholly depend on statute regulation in this State, any one using this extraordinary and harsh power must comply with all the provisions of the statute. Opinion and authorities cited on page 207, 23 W. Va., in case of *Adams* v. *Clarksburg ;* Lewis, Em. Dom. § 253. These statutes are rigidly construed, as they deprive the citizen of his property. *Id.* § 254. Holding the petition insufficient, we affirm the judgment.

AFFIRMED.